IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRINK'S PUERTO RICO, INC.,

Plaintiff

v.                                                                    CIVIL 03-1781 (PG)

SINDICATO DE GUARDIAS DE
SEGURIDAD Y CAMIONES
BLINDADOS DE PUERTO RICO,

Defendant

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This action, brought under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (hereinafter "LMRA"), was filed by plaintiff Brink's Puerto Rico, Inc. (hereinafter "Brink's"), on July 18, 2003. (Docket No. 1.) Defendant, Sindicato de Guardias de Seguridad y Camiones Blindados de Puerto Rico (hereinafter "the Union"), filed an answer to the complaint and concomitantly counterclaimed against Brink's on September 10, 2003. This matter is before the court on cross motions for partial summary judgment. (Docket Nos. 20, 22.) It was referred to me for a report and recommendation on February 11, 2004. (Docket No. 24.) After considering the arguments of the parties, the evidence in the record and for the reasons stated below, it is my recommendation that Brink's motion for partial summary judgment be DENIED. The Union's motion for partial summary judgment should be GRANTED.

CIVIL 03-1781 (PG)                                    2

## STATEMENT OF THE FACTS

Brink's is a corporation duly organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in San Juan, Puerto Rico and engaged in the business of providing armored cars and services involving the transportation of currency and other valuables. The Union is a bonafide union, with its principal offices in San Juan, Puerto Rico. The Union is the exclusive representative for purposes of collective bargaining regarding wages, hours of work and other terms of employment, of certain Brink's employees in accordance with the LMRA and with a certification by the National Labor Relations Board in case number 24-RC-7951.

On November 15, 1999, Brink's and the Union negotiated and executed a Collective Bargaining Agreement (hereinafter "CBA"). The CBA was originally set to expire on November 14, 2002, but it was extended by a stipulation entered into by both parties on November 11, 2002. Prior to this stipulation, and as part of their negotiations for a new CBA, Brink's General Manager Amos Argentini (hereinafter "Argentini"), met with the Union's president Cecelio Allende (hereinafter "Allende"). At this meeting, which took place on August 29, 2002, Argentini told Allende that Brink's had economic difficulties, was losing money, and needed to achieve savings in the new labor contract.

Despite Brink's supplication for prompt commencement of the negotiation, the Union did not agree to schedule a meting until October 31, 2002. Allende postponed the

CIVIL 03-1781 (PG)                                              3

October 31, 2002 meeting and the parties met the following day, November 1, 2002. At the meeting, Argentini expressed concern about the delay in the commencement of negotiations for the new CBA. The Union proposed a stipulation to extend the CBA while the parties negotiated.[1] Brink's agreed and said stipulation was signed at the next negotiation session held on November 11, 2002.

It is alleged by Brink's that after signing the stipulation, the Union embarked on a strategy aimed at delaying the negotiation process. There were numerous postponements of meetings, starting with the cancellation by the Union of a negotiation session scheduled

---

[1] The stipulation at issue provides in relevant part that

> The parties are negotiating changes to the Collective Bargaining Agreement that exists between them dated November 15, 1999, which is in effect until midnight November 14, 2002. In order to maintain harmony and the continuity of contractual relations while said negotiations continue, the parties have agreed freely and voluntarily, whereby they set forth as their formal stipulation:
>
> > 1. To extend the effectiveness of the Collective Bargaining Agreement for the time that the negotiations lasts.
> >
> > 2. To recognize that by this Stipulation the Union does not waive its claim to retroactivity of financial benefits that could be achieved in the negotiation.

("Motion Tendering Translations," Docket No. 25, Ex. I.)

CIVIL 03-1781 (PG)                                    4

for December 9, 2002.  The Union stalled the negotiations for more than two and a half months.  It is contended that between December 5, 2002 and February 26, 2003, Brink's was unsuccessful in its many attempts to get the Union to meet and continue negotiations.  According to Brink's, such dilatory tactics were due to the fact that one of the crucial economic concessions requested by Brink's in order to regain business viability was the reduction of the overtime rate from 200% to 150% per hour.  Brink's paid over 25,000 hours of overtime in the year 2002 and the allegation is that the Union wanted to maintain a level of compensation for its members that was financially untenable to Brink's.

On March 31, 2003, Brink's notified the Union by letter that it was terminating the stipulation since it understood that the Union was not negotiating.  By ending the stipulation, Brink's terminated the CBA and on April 1, 2003, it implemented a lockout of employees in the bargaining unit.  In the letter, Brink's asserted that for a long time it had been pointing out the lack of seriousness with which the Union had been treating the negotiations.  The letter also stated that Brink's was convinced that the Union had not been acting in good faith, thus the termination of the stipulation and the lockout.

The Union filed a grievance pursuant to the CBA's Grievance and Arbitration Proceedings claiming that Brink's could not end the stipulation and lockout employees covered by the agreement.  Brink's raised the issue of arbitrability when the Union took the grievance to arbitration.  Specifically, Brink's cited to Article XIV of the CBA which provides in relevant part as follows:

CIVIL 03-1781 (PG)                                              5

> Section 7 - The arbitrator's award will be final and binding for the parties. However, the award will be in accordance with the law, provided also that no award can modify or alter the provisions of this Agreement. This will not be interpreted to mean that the parties could appear again before the arbitrator once the arbitrator issues the award.
>
> Section 8 - The functions of the arbitrator will be of a judicial nature and he/she will not have jurisdiction to consider or resolve any matter related to the negotiation of a new Agreement.

("Motion Tendering Translations," Docket No. 25, Ex. III, ¶¶ 7-8.) Brink's submits that despite the above language in the CBA, arbitrator Brunilda Domínguez González issued an arbitration award on June 20, 2003. In it, the arbitrator held that the grievance was arbitrable and that Brink's did not have the right to unilaterally invalidate the stipulation that it had negotiated bilaterally with the Union. It further ordered Brink's to pay the employees affected by the lock-out all salaries and other benefits that they failed to earn during the lock-out.

Brink's filed the present action seeking to invalidate the arbitration award. The Union counterclaimed against Brink's arguing that the arbitration award is valid and seeking enforcement of the same. The parties have filed cross motions for summary judgment claiming that the controversy should be decided in their favor as a matter of law.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

CIVIL 03-1781 (PG)                                   6

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)). A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002). A fact is considered material if it has the potential to affect the

CIVIL 03-1781 (PG)                                  7

outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). The filing of cross motions for summary judgment do not alter the application of the above-outlined standard. Rather, the court must determine whether either party is entitled to judgment as a matter of law on facts that are not disputed. Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001). "[T]he court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

Furthermore, when, as in this case, the material facts are undisputed, the inquiry on summary judgment becomes one of law. Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)). The court must, in other words, determine which party is entitled to judgment as a matter of law. Santiago-Sánchez v. Gate Eng'g Corp., 291 F. Supp. 2d 7, 9 (D.P.R. 2003).[2]

## DISCUSSION

Brink's seeks to vacate the arbitration award. The argument advanced by Brink's is that pursuant to the terms of the CBA, the arbitrator did not have jurisdiction to resolve

---

[2] In its opposition to Brink's motion for partial summary judgment, the Union does not dispute Brink's statement of uncontested facts and adopts it, claiming that based on said undisputed facts, partial summary judgment should be entered in its favor. (Docket No. 22, at 3.)

CIVIL 03-1781 (PG)                             8

a dispute intimately and directly related to the negotiation of a new CBA. Therefore, according to Brink's, partial summary judgment is warranted with respect to the validity of the arbitration award. Furthermore, it is Brink's position that a factual dispute remains with respect to the Union's counterclaim and the merits of the Union's contention that Brink's unlawfully terminated the stipulation and implemented a lockout.

The Union argues, that although it agrees that the arbitrator is precluded from exercising jurisdiction over matters related to the negotiations of a new CBA, that this is not the case here. According to the Union, the parties indefinitely extended the CBA with a stipulation entered into prior to expiration. The stipulation is clear and unambiguous, the Union submits, limiting the parties' ability to unilaterally terminate the CBA while negotiations were conducted. It is the Union's position that the arbitrator acted within the boundaries of the CBA when she considered whether Brink's breached its obligation by implementing a lockout which is strictly prohibited by the agreement. In addition, the Union claims that rather than considering matters related to the negotiations, the arbitrator determined that under the terms of the agreement, which was in full force but for Brink's unilateral termination, she could exercise jurisdiction over the Union's grievance. Finally, the Union maintains that if Brink's understood that the Union was not negotiating in good faith, it should have filed an unfair labor practice charge with the National Labor Relations Board, as it subsequently did in case 24-CB-2262.

CIVIL 03-1781 (PG)                                          9

This case arises under section 301 of the LMRA, 29 U.S.C. § 185(a),[3] insofar as the parties are asking the court to entertain the validity of an arbitrator's award under the terms of a CBA. However, judicial review of a labor arbitration decision pursuant to a CBA is very limited. Major League Baseball Player's Ass'n v. Garvey, 532 U.S. 504, 509 (2001). "[R]eview of labor arbitral decisions is extremely narrow and 'extraordinarily deferential.'" Kraft Foods, Inc. v. Office & Prof'l. Employees Union, Local 1295, 203 F.3d 98, 100 (1st Cir. 2000) (quoting Dorado Beach Hotel Corp. v. Unión de Trabajadores de la Industria Gastronómica Local 610, 959 F.2d 2, 3-4 (1st Cir. 1992)). Federal courts cannot review arbitral decisions even if the allegation is that such decision rests on factual errors or that the arbitrator misinterpreted the parties' agreement. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987). "'[A]s long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his

---

[3] Section 301 of the LMRA provides in pertinent part:

> (a) Venue, amount, and citizenship
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

CIVIL 03-1781 (PG)                              10

authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" E. Assoc. Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000) (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. at 38). An arbitration award should be upheld so long as the court can find within the four corners of the agreement any plausible basis for the arbitrator's interpretation. El Dorado Technical Servs., Inc. v. Unión General de Trabajadores de Puerto Rico, 961 F.2d 317, 319 (1st Cir. 1992). However, that does not mean that the arbitrator is free to stray from the interpretation and application of the agreement and "dispense his own brand of industrial justice." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960); Dorado Beach Hotel Corp. v. Unión de Trabajadores de la Industria Gastronómica, Local 610, 959 F.2d 2, 4 (1st Cir. 1992) (holding that deference to an arbitrator's decision does not mean that he or she has "carte blanche approval" of any and every arbitral decision). On the contrary, his award "'must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice.'" E. Assoc. Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. at 62 (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. at 38).

Here, the claim is that the arbitrator overstepped the boundaries of her authority. But since the power of an arbitrator emanates from the language of the agreement, the

CIVIL 03-1781 (PG)                                    11

court must look at what restrictions or limitations, if any, such agreement imposes on the arbitrator's authority. <u>Strathmore Paper Co. v. United Paperworkers Int'l Union</u>, 900 F.2d 423, 426 (1st Cir. 1990).

The CBA specifically states that the arbitrator "will not have jurisdiction to consider or resolve any matter related to the negotiation of a new Agreement." (Docket No. 25, Ex. III, ¶ 8.) In her award, the arbitrator considered the issue of arbitrability raised by Brink's before entering into the merits of the Union's grievance.[4] She concluded that the grievance was substantively arbitrable. (Docket No. 25, Ex. IV, at 4.) The arbitrator specifically held that Brink's could not unilaterally invalidate the stipulation that extended the effectiveness of the CBA while the parties negotiated. (Docket No. 25, Ex. IV, at 4.) Brink's could not, according to the arbitrator, unilaterally cancel the stipulation negotiated bilaterally, freely and voluntarily, by the parties. (<u>Id.</u>) She reasoned that the stipulation was clear and unambiguous and that the parties had to adhere to its literal sense. The stipulation contains no exceptions and is not subject to any restrictions in the arbitrator's opinion. (<u>Id.</u> at 6.) The intent of the parties was to extend the validity of the CBA while negotiations

---

[4] It appears that at the arbitration hearing, Brink's argued that the arbitrator had no jurisdiction because the stipulation extending the CBA was conditioned on the parties negotiating in good faith and that it was entitled to end the same thus rendering the CBA terminated as well. Here, Brink's claim that the arbitrator issued an *ultra vires* decision is based on the language of the CBA precluding arbitration on matters related to the negotiation of a new agreement. (Docket No. 25, Ex. IV, at 7.)

CIVIL 03-1781 (PG)                                              12

lasted. (Id.) Finally, the arbitrator explained that under the facts of this case, the Union made sure that the employees were protected while the parties negotiated a new agreement and that Brink's accepted. (Id. at 7.) Therefore, she concluded that since Brink's could not cancel the stipulation unilaterally, the CBA was still valid and effective and the arbitrator had jurisdiction to consider the merits of the Union's grievance which in turn charged Brink's with violating the CBA by implementing a lockout. (Id.)

The arbitrator's decision is sound and well-reasoned. From a cursory reading of both the stipulation entered by the parties and the arbitration award, I cannot conclude that the arbitrator acted without authority. The language of the stipulation is clear. Brink's and the Union extended the CBA while negotiations for a new agreement were conducted. They did so freely and voluntarily. Consequently, Brink's unilateral cancellation of the same was unreasonable and unlawful.[5] Moreover, since the CBA was still valid at the time of the implementation of the lockout, the Union was justified in bringing its grievance and the arbitrator was correct in her exercise of jurisdiction.[6] The CBA is clear and unambiguous in prohibiting lockouts except for economic reasons. Therefore, I cannot find

---

[5] Even with its allegation that the Union was negotiating in bad faith, other options short of unilaterally ending the CBA were available. The arbitrator suggested the filing of an Unfair Labor Practice charge with the NLRB. (Docket No. 25, Ex. IV, at 7.)

[6] In its Article XVI, section 5 titled Industrial Peace, the CBA specifically states that the "Company shall not resort to a lockout during the effectiveness of this Agreement. It shall be understood that the total or partial closing of one or more of the operations, as well as the lay-off for financial reasons, shall not constitute a lockout." (Id. at 8.)

CIVIL 03-1781 (PG)                                    13

that the arbitrator acted without the authority given to her by the terms of the existing and valid agreement.

Finally, I also find that the language in the CBA prohibiting the exercise of jurisdiction in matters related to the negotiation of a new agreement, did not prevent the arbitrator from resolving the Union's grievance. While the grievance was filed during the time the parties were negotiating a new agreement, it did not relate to the substance of such negotiations. Rather, it arose out of Brink's unilateral termination of the stipulation and the subsequent implementation of a lockout. The award did not modify or alter the terms of the agreement; to the contrary, it evidences a thorough and balanced interpretation of its terms. Consequently, I find that since Brink's had no right to unilaterally terminate the stipulation extending the effectiveness of the CBA; the terms of said agreement controlled the grievance proceedings. Additionally, the arbitrator had, pursuant to the terms of the agreement, authority to resolve the merits of the Union's grievance that charge Brink's with implementing a lockout in violation of the CBA. After all, "'[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.'" Kraft Foods, Inc. v. Office & Prof'l. Employees Union, Local 1295, 203 F.3d at 100 (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. at 37-38). It is my recommendation that Brink's motion for summary judgment be DENIED. The Union's motion, however, based on its counterclaim, should be GRANTED.

CIVIL 03-1781 (PG)                              14

## CONCLUSION

In view of the above, it is my recommendation that Brink's' motion for summary judgment be DENIED. The Union's motion should be GRANTED and judgment should be entered declaring the validity of the arbitration award at issue and ordering its enforcement.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 26th day of May, 2004.

                                                S/ JUSTO ARENAS
                                    Chief United States Magistrate Judge