IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRINK'S PUERTO RICO,

   Plaintiff,

    v.                                                    CIV. NO. 03-1781 (PG)

SINDICATO DE GUARDIAS DE SEGURIDAD DE
PUERTO RICO,

   Defendant.

## OPINION AND ORDER

Before the Court is Chief Magistrate Judge Justo Arena's Report and Recommendation ("R&R")(Docket No. 27) regarding plaintiff Brink's Puerto Rico ("Brink's) Motion for Partial Summary Judgment (Docket No. 20) and defendant Sindicato de Guardias de Seguridad de Puerto Rico's ("Sindicato") Cross-Motion for Partial Summary Judgment. (Docket No. 22.) The Magistrate Judge recommends that Brink's motion be denied and Sindicato's motion be granted. For the following reasons, the Court **ADOPTS** the Magistrate Judge's recommendations.

## BACKGROUND[1]

Brink's is a corporation duly organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in San Juan, Puerto Rico and engaged in the business of providing armored cars and services involving the transportation of currency and other valuables. The Union is a bonafide union with its principal offices in San Juan, Puerto Rico. The Union is the exclusive representative of certain Brink's employees for purposes of collective bargaining regarding wages, hours of work, and other terms of employment in accordance with the Labor Management Relations Act ("LMRA") and with a certification by the National Labor Relations Board in case number 24-RC-7951.

On November 15, 1999, Brink's and the Union negotiated and executed a Collective Bargaining Agreement (hereinafter "CBA"). (See Docket No. 25,

---

[1] In its opposition to Brink's motion for partial summary judgment, the Union does not dispute Brink's statement of uncontested facts and adopts it, claiming that based on said undisputed facts, partial summary judgment should be entered in its favor. (Docket No. 22, at 3.) Furthermore, the parties have not contested the Magistrate Judge's factual findings, hence, the Court culls the relevant facts from the Magistrate Judge's R&R.

Exhibit III.) The CBA was originally set to expire on November 14, 2002, but it was extended by a stipulation entered into by both parties on November 11, 2002. (See Docket No. 25, Exhibit 1.) Prior to this stipulation, and as part of the negotiations for a new CBA, Brink's General Manager met with the Union's president on August 29, 2002, and told him that Brink's had economic difficulties, was losing money, and needed to achieve savings in the new CBA. Despite Brink's request for a prompt commencement of the negotiations, the meetings scheduled were cancelled.

Brink's General Manager expressed a concern about the delay in the commencement of the negotiations for the new CBA. The Union proposed a stipulation to extend the CBA while the parties negotiated. Brink's alleges that after signing the stipulation, the Union embarked on a strategy aimed at delaying the negotiation process. The record shows that the negotiations were stalled for more than two and a half months. According to Brink's, such dilatory tactics were due to the fact that one of the crucial economic concessions requested by Brink's in order to regain business viability was the reduction of the overtime rate.

On March 31, 2003, Brink's notified the Union by letter that it was terminating the stipulation since it understood that the Union was not negotiating. By ending the stipulation, Brink's terminated the CBA and on April 1, 2003, it implemented a lockout of employees in the bargaining unit. In the letter, Brink's asserted that for a long time it had been pointing out the lack of seriousness with which the Union had been treating the negotiations. The letter also stated that Brink's was convinced that the Union had not been acting in good faith which provoked the termination of the stipulation and the lockout.

The Union filed a grievance pursuant to the CBA's Grievance and Arbitration Proceedings claiming that Brink's could not end the stipulation and lockout the employees covered by the agreement. The Union took the grievance to arbitration. On June 20, 2004, arbitrator Brunilda Domínguez González issued an arbitration award holding that the grievance was arbitrable and that Brink's did not have the right to unilaterally invalidate the stipulation that it had bilaterally negotiated with the Union. The arbitrator

further ordered Brink's to pay the employees affected by the lockout all salaries and other benefits that they failed to earn during that time.

Brink's filed the above captioned case to invalidate the arbitration award arguing it runs contrary to the CBA's language. The Union counterclaimed against Brink's arguing that the arbitration award is valid and seeking its enforcement. The parties filed cross-motions for partial summary judgment which were referred to the Magistrate Judge for a R&R.

## DISCUSSION

### I. Standard of Review - Report and Recommendation

Pursuant to 28 U.S.C. §§ 636(b)(1)(B), Fed.R.Civ.P. 72(b), and Local Rule 503, a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." United States of America v. Mercado Pagan, 286 F.Supp.2d 231, 233 (D.P.R. 2003)(quoting 28 U.S.C. §§ 636(b)(1).) If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." Felix Rivera de Leon v. Maxon Engineering Services, Inc., 283 F.Supp.2d 550, 555 (D.P.R. 2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate", however, if the affected party fails to timely file objections," 'the district court can assume that they have agreed to the magistrate's recommendation'." Alamo Rodriguez, 286 F.Supp.2d at 146 (quoting Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985).

### II. Summary Judgment

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir.

2000). Material facts are those that are outcome-determinative under the governing substantive law. Morrisey v. Boston Five Cents Savings Bank, 54 F.3d 27, 31 (1st Cir. 1995). To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997), through definite and competent evidence. Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000).

At the summary judgment juncture, there is "no room for the measured weighing of conflicting evidence", or for the injection of the judge's own conceptions of likelihood into the determination. Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1997). The Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002).

The First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against that party; therefore, a District Court is nonetheless "obliged to consider the motion on merits, in light of the record as constituted, in order to determine whether judgment would legally be appropriate." Kelly v. United States, 924 F.2d 355, 358 (1st Cir.1991); see also Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1517 (1st Cir. 1991)(before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law).

### III. Analysis

Brink's seeks to vacate the arbitration award arguing that pursuant to the terms of the CBA, the arbitrator did not have jurisdiction to resolve a dispute intimately and directly related to the negotiation of a new CBA. Furthermore, Brink argues that a factual dispute remains with respect to the Union's counterclaim and the merits of the Union's contention that Brink's

unlawfully terminated the stipulation and implemented a lockout.

To the contrary, the Union argues that although it agrees that the arbitrator is precluded from exercising jurisdiction over matters related to the negotiation of a new CBA, that is not the issue here. The Union sustains that the parties bilaterally extended the CBA indefinitely with a stipulation entered into prior to its expiration. The Union claims that the stipulation is clear and unambiguous, therefore, the parties could not unilaterally terminate the CBA until the negotiations were concluded. It is the Union's position that the arbitrator acted within the boundaries of the CBA when she considered whether Brink's breached its obligation by implementing a lockout which was strictly prohibited by the agreement. Lastly, the Union maintains that if Brink's understood that the Union was not negotiating in good faith, it should have filed an unfair labor practice charge with the National Labor Relations Board, as it subsequently did in case 24-CB-2262.

The Court's review "of labor arbitral decisions is extremely narrow and extraordinarily deferential." Kraft Foods, Inc. v. Office and Professional Employees Intern. Union, AFL-CIO, CLC, Local 1295, 203 F.3d 98, 100 (1st Cir. 2000)(citing Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica Local 610, 959 F.2d 2, 3-4 (1st Cir.1992). See Major League Baseball Player's Ass'n v. Garvey, 532 U.S. 504, 509 (2001); Pan American Grain Mfg., Inc. v. Congreso de Uniones Industriales de P.R., No. Civ.05-1340, 2005 WL 2100981 at *2 (D.P.R. August 31, 2005). This is so because "the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge" therefore, "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." Kraft Foods, Inc., 203 F.3d at 100 (quoting United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37-38 (1987). "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960). "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. Id. Of course, the arbitrator may not "ignore the contract and simply dispense 'his own brand of

industrial justice'." <u>Kraft Foods, Inc.</u>, 203 F.3d at 100 (<u>quoting</u> <u>United</u>
<u>Steelworkers of America</u>, 363 U.S. at 597); <u>Dorado Beach Hotel Corp</u>, 959 F.2d
at 4(holding that deference to an arbitrator's decision does not mean that he
or she has "carte blanche approval" of any and every arbitral decision).
Instead, "the arbitrator's decision must 'draw[ ] its essence' from the
agreement. <u>Id.</u> "'[A]s long as [an honest] arbitrator is even arguably
construing or applying the contract and acting within the scope of his
authority,' the fact that 'a court is convinced he committed serious error
does not suffice to overturn his decision.'" <u>E. Assoc. Coal Corp. v. United</u>
<u>Mine Workers of Am., Dist. 17</u>, 531 U.S. 57, 62 (2000) (<u>quoting</u> <u>Misco, Inc.</u>,
484 U.S. at 38); <u>see</u> <u>Kraft Foods, Inc.</u>, 203 F.3d at 100. In sum, an
"arbitration award should be upheld so long as the court can find within the
four corners of the agreement any plausible basis for the arbitrator's
interpretation." <u>El Dorado Technical Servs., Inc. v. Unión General de</u>
<u>Trabajadores de Puerto Rico</u>, 961 F.2d 317, 319 (1st Cir. 1992).

In considering Brink's argument that the arbitrator overstepped the
boundaries of her authority, the Magistrate Judge looked at restrictions or
limitations, if any, that the agreement imposed on the arbitrator's authority
given that the former's power emanates from the language of the agreement. <u>See</u>
<u>Strathmore Paper Co. v. United Paperworkers Int'l Union</u>, 900 F.2d 423, 426
(1st Cir. 1990). Here, the CBA specifically states that the arbitrator "will
not have jurisdiction to consider or resolve any matter related to the
negotiation of a new Agreement." (<u>See</u> Docket No. 25, Exhibit III, ¶ 8.) The
record shows that in her award, the arbitrator considered the issue of
arbitrability raised by Brink's before entering into the merits of the Union's
grievance and concluded that the grievance was substantively arbitrable.
(Docket No. 25, Exhibit IV at 4.)

The arbitrator specifically held that Brink's could not unilaterally
invalidate the stipulation that extended the effectiveness of the CBA while
the parties negotiated. (<u>See</u> <u>id.</u>) According to the arbitrator, Brink's could
not unilaterally cancel the stipulation negotiated bilaterally, freely and
voluntarily by the parties. (<u>Id.</u>) The arbitrator reasoned that the stipulation
was clear and unambiguous and that the parties had to adhere to its literal

sense. In her opinion, the stipulation contains no exceptions and is not subject to any restrictions. (Id. at 6.) Accordingly, she concluded that the intent of the parties was to extend the validity of the CBA while negotiations lasted. (Id.) Finally, the arbitrator explained that under the facts of the case, the Union made sure that the employees were protected while the parties negotiated a new agreement, as stipulation Brink's had accepted. (Id. at 7.) Therefore, she concluded, since Brink's could not cancel the stipulation unilaterally, the CBA was still valid and effective and the arbitrator had jurisdiction to consider the merits of the Union's grievance which in turn charged Brink's with violating the CBA by implementing a lockout. (Id.)

Based on the record, the Magistrate Judge determined that the arbitrator's decision was sound and well-reasoned. From a cursory reading of both the stipulation entered by the parties and the arbitration award, he determined that the arbitrator acted within authority granted to her pursuant to the CBA. (See Docket No. 25, Exhibits I, III & IV.) He found that the language of the stipulation was clear and unambiguous. Brink's and the Union extended the CBA while negotiations for a new agreement were conducted. They did so freely and voluntarily. Consequently, Brink's unilateral cancellation of the same was unreasonable and unlawful. The CBA clearly prohibited lockouts except for economic reasons. (See Docket No. 25, Exhibit IV at 8.) Accordingly, the Magistrate Judge concluded that since the CBA was still valid at the time of the implementation of the lockout, the Union was justified in bringing its grievance and the arbitrator was correct in her exercise of jurisdiction.

Brink's objects to the Magistrate Judge's conclusion insisting that the arbitrator stepped beyond the boundaries of the jurisdictional prohibition of the CBA inasmuch as her decision deals with matters inextricably related to the negotiation of a new CBA.

Having reviewed the record, the Court agrees with the Magistrate Judge's assessment of the case. The language of the stipulation is clear and Brink's could not unilaterally cancel the same. Furthermore, since the CBA was still valid at the time of the implementation of the lockout, the Union was justified in brining its grievance and the arbitrator was correct in her

Civ. No. 03-1781(PG)                                                    Page 8

exercise of jurisdiction. Finally, we agree with the Magistrate Judge in that the language in the CBA prohibiting the exercise of jurisdiction in matters related to the negotiation of a new agreement, did not prevent the arbitrator from resolving the Union's grievance. It is clear that while the grievance was filed during the time the parties were negotiating a new agreement, it did not relate to the substance of such negotiations. Instead, it arose out of Brink's unilateral termination of the stipulation and the subsequent implementation of a lockout. The arbitrator's award did not modify or alter the terms of the agreement; to the contrary, it evidences a thorough and balanced interpretation of its terms. In sum, Brink's had no right to unilaterally terminate the stipulation extending the effectiveness of the CBA and the terms of said agreement controlled the grievance proceedings. Furthermore, the arbitrator had, pursuant to the terms of the agreement, authority to resolve the merits of the Union's grievance that charge Brink's with implementing a lockout in violation of the CBA.

What is more, even with its allegation that the Union was negotiating in bad faith, as the Magistrate Judge considered, the were other options short of unilaterally ending the CBA available. Brink's could have, as the arbitrator suggested, filed an Unfair Labor Practice charge with the NLRB. (See Docket No. 25, Exhibit IV at 7.)

**CONCLUSION**

Upon *de novo* review of the exhaustive and itemized R&R, as well as the objections thereto, the Court finds no reason to depart from the Magistrate Judge's sound findings and conclusions. Accordingly, the Court **ADOPTS** the R&R in its entirety **(Docket No. 27), DENIES** Brink's motion for summary judgment **(Docket No. 20)** and **GRANTS** Sindicato's motion based on its counterclaim **(Docket No. 22.)**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 25, 2006.

_____S/JUAN M. PEREZ-GIMENEZ
                                        U. S. DISTRICT JUDGE